UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ELVIN RUANO LEIVA,

                           Petitioner,

                                    Civil Action No.
                v.                 26-cv-01162 (Bulsara, J.)

CHRISTOPHER SHANAHAN, Field Office Director,
New York Field Office, and U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,

                           Respondents.

-------------------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO THE PETITION FOR WRIT OF HABEAS CORPUS**


                                    JOSEPH NOCELLA, JR.
                                    United States Attorney
                                    Eastern District of New York
                                    271-A Cadman Plaza East
                                    Brooklyn, New York 11201


                                    March 2, 2026


Marika M. Lyons
Assistant U.S. Attorney
      (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS…………………………………………………...…………..2

ARGUMENT      …………………………………………………………………………..4

    I.   THE PETITION SHOULD BE DENIED BECAUSE PETITIONER'S DETENTION IS PROPER UNDER 8 U.S.C. § 1231 ............................................................................. 4

    II. PETITIONER DOES NOT HAVE A SUBSTANTIVE DUE PROCESS RIGHT TO FAMILY UNITY IN THE CONTEXT OF A FINAL ORDER OF REMOVAL ................ 9

CONCLUSION      …………………………………………………………………….....11

## PRELIMINARY STATEMENT

Respondents, by their attorney Joseph Nocella, Jr., United States Attorney for the Eastern District of New York, Marika M. Lyons, Assistant United States Attorneys of counsel, respectfully submit this memorandum of law in opposition to the Petition for a Writ of Habeas Corpus.[1]

Petitioner is a Honduran national who illegally crossed the U.S. border in October 2005. Petitioner was encountered shortly thereafter and was personally served with a Notice to Appear, placing him in removal proceedings. Due to a lack of bed space, he was released on his own recognizance and ordered to appear for a scheduled immigration court appearance on March 30, 2006. He failed to appear or to provide any explanation for his absence. As such, he was ordered removed *in absentia*. Petitioner never appealed or challenged that order of removal. Yet Petitioner remained in the United States illegally, and was convicted of driving under the influence in 2019.

ICE encountered Petitioner on February 27, 2026 in connection with the search for another target. After ascertaining Petitioner's lack of lawful status, ICE arrested him and brought him in for processing. During processing, ICE learned that Petitioner was subject to a final order of removal and detained him pursuant to 8 U.S.C. § 1231.

Petitioner does not assert any specific claims, but appears to rely primarily on the due process clause of the Fifth Amendment of the Constitution to challenge his detention.[2] Much of

---

[1] Respondents apologize for the lack of a Table of Authorities. Owing to extremely limited staffing over the weekend, and the short timeframe, this Office was unable to create that Table. At the Court's direction, this Office is prepared to file a memorandum of law amended purely to insert a Table of Authorities by the end of the day.

[2] Petitioner also refers to the Trafficking Victims Protection Reauthorizatin Act ("TVPRA") and the Flores Settlement Agreement (Petition p. 1) but fails to explain how they are relevant to this action.

the Petition is devoted to inapposite arguments that presume there is no final order of removal, and that relate to detention *during* removal proceedings, whether under 8 U.S.C. §§ 1225 or 1226.

Here, however, there is already an administratively final order of removal, and Petitioner has accordingly been detained under 8 U.S.C. § 1231.  Therefore, this action must be dismissed. The detention at issue here is warranted under 8 U.S.C. § 1231 and, having lasted only three days at the time of this filing, is not prolonged.  Additionally, Petitioner's assertion that his right to family unity bars his detention is incorrect; he enjoys no such substantive due process right in the face of a final order of removal.

For all these reasons, the Habeas Petition warrants dismissal and the February 28 Order staying removal should be resolved.

## STATEMENT OF FACTS

In the interests of brevity, Respondents summarize the contents of the Declaration of Patrick Heerey, dated March 2, 2026 ("Decl."), which states the administrative history in more detail.  Petitioner is a national of Honduras.  On or about October 27, 2005, Petitioner entered the United States without inspection and was encountered, wet and muddy, by Border Patrol less than 500 yards from the Rio Grande River.  *Id.* Ex. A (October 28, 2005 Record of Deportable/Inadmissible Alien).  Petitioner admitted that he had no documents permitting him to be in or remain in the United States legally.  *Id.*  At the time, Petitioner asserted his name was Elvin Ruano Orellana and that he was a citizen and national of Guatemala.  *Id.* ¶ 5.  Petitioner was arrested and brought to a border patrol station for processing, including fingerprinting.  Decl. ¶¶ 4, 6.  On October 28, 2005, Petitioner was issued a Notice to Appear, placing in removal proceedings on the basis that he was an alien present in the United Stated who had not been admitted or paroled.  *See* Dec. Ex. B (Notice to Appear).  The Notice to Appear was served on

Petitioner in person, and he was directed to appear before an immigration judge on March 30, 2006. Because of a lack of space to house the Petitioner, he was released on his own recognizance. *See* Record of Deportable/Inadmissible Alien; Decl. Ex. C (Notice of Custody Determination).

On the date of the March 30, 2006 hearing, Petitioner did not appear, and did provide any explanation for his failure to appear. *See* Decl. Ex. D, Decision. Petitioner was order removed *in absentia*. *Id.* Petitioner did not appeal this decision. Decl. ¶ 9.

In 2019, Petitioner was convicted of driving while intoxicated. Decl. ¶ 10; Ex. F (February 27, 2026 Record of Deportable/Inadmissible Alien).

On February 27, 2026, Petitioner was encountered by ICE while officers were seeking another target. Decl. ¶ 11. During the encounter, Petitioner provided officers with a Honduran passport and New York State driver's license bearing the name Elvin Ruano Leiva, and admitted that he was not in the country lawfully. Decl. ¶ 11. ICE arrested Petitioner and brought him to ICE offices for processing. *Id.* During processing, Petitioner's fingerprints were identified as a match to Elvin Ruano Orellana, the same individual encountered on October 27, 2005 and ordered removed on March 30, 2006. Petitioner was booked into Nassau County Correctional Center. *Id.* ¶ 13. Petitioner was detained Petitioner pursuant to 8 U.S.C. § 1231 because he is subject to a final order of removal. Decl. ¶¶ 12, 20.

Also on February 27, 2026, this action was filed. *See* ECF No. 1. On February 28, 2026, this Court issued an order staying removal (the "February 28 Order"). ICE is complying with that order, and will not remove Petitioner pending further decision of this Court. Petitioner is currently being detained at 26 Federal Plaza.[3]

---

[3] On February 28, 2026 at approximately 5:17 p.m., Petitioner was temporarily transferred to Delaney Hall Detention Facility in New Jersey due to an error. Decl. ¶¶ 15-16. Petitioner was transferred to 26 Federal Plaza on March 1, 2026 at approximately 11:09 a.m. in order to comply

**ARGUMENT**

**I.    THE PETITION SHOULD BE DENIED BECAUSE DETENTION IS PROPER UNDER 8 U.S.C. § 1231**

The Court should find that Petitioner's detention is valid under *Zadvydas v. Davis*, 533 U.S. 678 (2001), which considered ICE's authority to detain an alien subject to a final removal order.

As an initial matter, much of the Petition is devoted to irrelevant and inapposite arguments relating discretionary detention under 8 U.S.C. § 1226(a), relating to detention *during* removal proceedings. Here, however, there is already an administratively final order of removal, and Petitioner has been detained to execute that final order of removal.[4]

---

with the Court's February 28 Order. *Id.* ¶¶ 17-18. Respondents apologize for this inadvertent violation of the provision of that Order that limited the location of Petitioner's detention to this District and the Southern District of New York.

[4]     While Petitioner does not address the removal order against him, to the extent Petitioner seeks to challenge the issuance of his removal order *in absentia*, or seeks a stay of removal, this court lacks jurisdiction. *See* 8 U.S.C. § 1252(a)(5) ("a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal"); 8 U.S.C. § 1252(b)(9) ("[j]udicial review of all questions of law and fact" arising from a removal proceeding "shall be available only in judicial review of a final order" of removal, and "no court shall have jurisdiction . . . by habeas corpus . . . or by any other provision of law . . . to review such an order or such questions of law or fact."); *see also* 8 U.S.C. § 1252(g).

Section 1252(a)(5) gives the courts of appeals exclusive jurisdiction over review of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 105 (2d Cir. 2008). "'[T]aken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue – whether legal or factual – arising from *any* removal-related activity can be reviewed only through' a petition for review filed with an appropriate court of appeals." *Asylum Seeker Advocacy Project v. Barr*, 409 F. Supp. 3d 221, 224 (S.D.N.Y. 2019) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). The Second Circuit has construed §§ 1252(a)(5) and 1252(b)(9) broadly to preclude district courts from exercising subject matter jurisdiction over an action that even "indirectly challeng[es]" an order of removal. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011); *accord, Singh v. USCIS*, 878 F.3d 441, 445-46 (2d Cir. 2017) (§ 1252(a)(5) precluded the district court from exercising jurisdiction over an action to compel USCIS to adjudicate the merits of the plaintiff's application for adjustment of status because ordering USCIS to consider that application could lead USCIS to approve that application, which in turn would lead to the nullification of his removal order). In addition, the Second Circuit has found that 8 U.S.C. § 1252(g) independently bars district courts from ordering a stay of a final order of removal. *Troy as Next Friend Zhang v. Barr*, 822 Fed. Appx. 38, 39- 40 (2d Cir. 2020)..

Pursuant to 8 U.S.C. § 1231, ICE has authority to detain an alien subject to a final removal

order. 8 U.S.C. § 1231(a); *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("8 U.S.C.

---

Consistent with *Delgado* and *Troy*, many judges in this District and other judges in this Circuit have held that § 1252(a)(5) and 1252(b)(9)'s bars on challenges to removal orders preclude district courts from hearing a claim challenging an *in absentia* removal order or seeking a stay of removal. Some of these decisions also cite § 1252(g). The petitioner in *Oriakhi v. DHS*, 762 F. Supp. 3d 183 (E.D.N.Y. 2025) (Matsumoto, J.), *aff'd*, No. 25-243-cv, 2026 WL 303642 (2d Cir. Feb. 5, 2026), sought a district court order staying his removal order and invalidating his removal order, claiming that his due process rights were violated because he was not afforded an opportunity to contest his removal in removal proceedings. The Honorable Kiyo A. Matsumoto dismissed the action as barred by § 1252(a)(5), holding that only courts of appeals may review removal orders. *Oriakhi*, 762 F. Supp. 3d at 185-86. Likewise, in *Asylum Seeker*, the plaintiff organizations challenged the validity of *in absentia* removal orders and sought a stay of removal and an order directing the government to give them an administrative hearing on motions to vacate those orders. *Asylum Seeker* held that the claims were barred by §§ 1252(a)(5) and 1252(b)(9) as indirect challenges to removal orders because the plaintiffs' "'ultimate goal' is to challenge the removal orders themselves." *Asylum Seeker*, 409 F. Supp. 3d at 225, 227 (quoting *Delgado*, 643 F.3d at 55). Thus §§ 1252(a)(5) and 1252(b)(9) deprive this Court of any claim by Petitioner that challenges the validity of the order issued against him in 2006 or seeks a stay of removal. *See also Metreveli v. Flanagan*, 25-cv-8039, 2025 WL 3496754, at *4-5 (S.D.N.Y. Dec. 5, 2025) (§§ 1252(a)(5), 1252(b)(9) and 1252(g) barred motion for stay of removal); *Villatoro v. Noem*, No. 25-cv-5306, 2025 WL 2880140, at *4 (E.D.N.Y. Oct. 9, 2025) (Merchant, J.) (where plaintiff sought a stay of removal pending adjudication of his application for a visa, concluding that § 1252(a)(5) bars claims for a stay of removal because a stay would invalidate the removal order); *Lin v. Borgen*, No. 25-cv-5618, 2025 WL 2158874, at *3 (S.D.N.Y. July 30, 2025) (concluding that §§ 1252(a)(5) and 1252(b)(9) jurisdictionally bar, *inter alia,* motion to stay execution of removal order); *Perez v. United States*, Nos. 25 Civ. 3400, 09 Cr.159, 2025 WL 1558578, at *3 (S.D.N.Y. June 3, 2025) (denying application for stay of removal as barred by § 1252(a)(5) and § 1252(g)); *K.K. v. Garland*, No. 23-cv- 6281, 2025 WL 274431, at *2 (W.D.N.Y. Jan. 23, 2025), *appeal dismissed sub nom. K.K. v. Bondi*, No. 25-190 (2d Cir Apr. 8, 2025) (holding § 1252(g) barred K.K.'s claim for a stay of removal until his visa applications were adjudicated); *Noor v. Homan*, 17-cv-1558, 2018 WL 1313233, at *3 (E.D.N.Y. Feb. 26, 2018) (Kuntz, J.) (holding that § 1252(a)(5) "bars a wide range of claims that were held to constitute challenges to removal orders, including requests for stays of removal . . ." (citing *Delgado*, 643 F.3d at 55); *Joseph v. U.S. Attorney General*, No. 17-CV-5008, 2017 WL 6001776, at *1 (E.D.N.Y. Dec. 4, 2017) (Chen, J.) ("Since District Courts cannot review removal orders, they also cannot consider requests for stays of removal."; citing § 1252(a)(5)); *Akhuemokhan v. Holder*, No. 12-cv-1181, 2013 WL 6913170, at *2 (E.D.N.Y. Dec. 30, 2013) (Bianco, J.) ("to the extent petitioner . . . is seeking a stay of, or any other relief from, his order of removal, this Court lacks jurisdiction to grant such relief"; citing § 1252(a)(5)); *Royale v. INS*, No. 10-cv-2105, 2010 WL 2348651, at *1 (E.D.N.Y. June 9, 2010) (Matsumoto, J.) (district courts lack "jurisdiction to stay an order of . . . removal"; citing § 1252(a)(5)); *Scott v. Napolitano*, 618 F. Supp. 2d 186, 191-92 (E.D.N.Y. 2009) (Vitaliano, J.) (§§ 1252(a)(5) and 1252(b)(9) bar action to stay a removal order).

§ 1231(a), governs the detention, release, and removal of individuals 'ordered removed.'"); *accord Wang v. Ashcroft*, 320 F.3d 130, 145 (2d Cir. 2003) ("8 U.S.C. § 1231, governs the detention of aliens subject to final orders of removal."). Normally, an order of removal by an immigration judge shall become final, inter alia, "upon dismissal of an appeal by the Board of Immigration Appeals." 8 C.F.R 1241.1(a); *Chupina v. Holder*, 570 F.3d 99, 103 (2d Cir. 2009) (interpreting 8 U.S.C. § 1101(a)(47)(B) to conclude that "[a]n order of removal is 'final' upon the earlier of the BIA's affirmance of the immigration judge's order of removal or the expiration of the time to appeal the immigration judge's order of removal to the BIA."). An order of removal by an immigration judge issued *in absentia* becomes administratively final upon entry that day. *See* 8 C.F.R. § 1241.1(e); *Lin v. Francis,* 2025 WL 3751855, at *1 (S.D.N.Y. Dec. 29, 2025)*.* Here, Petitioner was ordered removed in March 2006 *in absentia*. Therefore, the order of removal against him is final.

Section 1231 establishes a 90-day "removal period" within which the government generally must secure removal after a removal order becomes final, and during which the government "shall" detain the alien until such removal. *See* 8 U.S.C. §§ 1231(a)(1)(A), (B)(i), (a)(2) ("During the removal period, the Attorney General shall detain the alien."). The Supreme Court addressed the Government's authority to detain aliens after this 90-day removal period in *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Court held that 8 U.S.C. § 1231(a)(6) authorizes immigration detention for a period reasonably necessary to effectuate the alien' removal from the United States, beyond 90 days, and that six months is a presumptively reasonable period of time for the government to effectuate the alien's removal. *Zadvydas*, 533 U.S. at 699-701. The Court also made it clear that this "presumption . . . does not mean that every alien not removed must be released after six months." *Id.* at 701; *see also Arteaga-Martinez*, 596 U.S. at 581 ("there is no

plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings after six months of detention").

The six-month period runs from the date an alien is *actually* detained, not from the date the alien's removal order became final, and the alien *could* have been detained. *See Callender v. Shahahan*, 281 F. Supp.3d 428, 435 (S.D.N.Y. 2017) (habeas petitioner "is confusing the 90-day 'removal period' under [Section 1231(a)(1)(A)], which began when his order became final in 2006[,] with the six month 'presumptively reasonable period of detention' under *Zadvydas*, which could not have begun until he was detained by ICE in 2015") (citations omitted). This makes perfect sense since the Supreme Court in *Zadvydas* was concerned with the potential for indefinite *detention* under Section § 1231(a)(6). *Zadvydas,* 533 U.S. at 690; *see also Jiang v. Bondi,* 2025 WL 3281819, at *2 (D.N.M. Nov. 25, 2025) (finding detention proper where removal period had begun to run 20 years earlier, because petitioner "confuses the 90-day removal period" with the "six-month "presumptively reasonable period of detention" under *Zadvydas*, which could not have begun until he was detained by ICE"); *Piao v. Lyons,* 2025 WL 3046783, at *2 (E.D. Va. Oct. 31, 2025) (concluding "as has other courts, that the government's failure to detain the Petitioner during the removal period or immediately thereafter does not eliminate the Government's ability to detain Petitioner for the purpose of enforcing that removal order at this time"); *Rodriguez–Guardado v. Smith*, 271 F.Supp.3d 331, 335 n.8 (D. Mass. 2017) ("Petitioner's contention that the *Zadvydas* clock runs while he is not in custody defies common sense.") (internal quotation marks and citation omitted); *Chun Yat Ma v. Asher*, No. C11-1797 MJP, 2012 WL 1432229, at *3 (W.D. Wash. Apr. 25, 2012) (noting that "detention is the core issue in *Zadvydas*" and holding that "the time between

Petitioner's removal order becoming final and his detention does not impact the due process analysis established by *Zadvydas*").[5]

Even after the six-month period expires, the initial burden is on the alien to show "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701; *Callender,* 281 F. Supp. 3d at 434 (citing *Pineda v. Shanahan*, 258 F. Supp. 3d 372, 379 (S.D.N.Y. 2017)). It is not sufficient for the alien to show that the government has been unable to obtain a travel document to date. *Callender*, 281 F.Supp.3d at 43. If the alien makes such a showing, the burden then shifts to the Government to provide "evidence sufficient to rebut that showing." *Id.* The "alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *Callender,* 281 F. Supp. 3d at 433-35 (citing *Clark v. Martinez*, 543 U.S. 371, 378 (2005)). Thus, in sum, the Supreme Court concluded, that if the alien fails to meet the burden, or if the government rebuts the alien's showing by establishing "significant likelihood of removal in the reasonably foreseeable future," then continued detention is permissible. *Zadvydas,* 533 U.S. at 701; *Callender*, 281 F.Supp.3d at 434 (citing *Beckford v. Lynch*, 168 F.Supp.3d 533, 539 (W.D.N.Y. 2016) (quoting *Zadvydas*, 533 U.S. at 701)). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas,* at 699. Thus, the Supreme Court avoided the "serious

---

[5] While one court recently rejected the proposition that a petitioner who was ordered removed in 2012 could be subject to Section 1231 detention, in that case, an immigration judge had withheld the petitioner's removal, and thus it was not clear "whether removal is possible." *Diallo v. Joyce,* 2025 WL 3718477, at *4 (S.D.N.Y. Dec. 23, 2025). Additionally, the petitioner in *Diallo* had an approved I-130 petition and legal authorization to work. Here, Petitioner was not granted withholding of removal or any other type of relief, and has been living surreptitiously in the United States since failing to attend his immigration court proceedings in 2006. Therefore, *Diallo* does not assist Petitioner here.

constitutional threat" presented by a "literal" interpretation of 8 U.S.C. § 1231(a)(6), which could authorize "indefinite, perhaps permanent, detention" in some circumstances, *id.* at 688, 699.

Here, Petitioner's references to "prolonged," "long[ ]" and "extended" detention are perplexing. Petition at Section IV.  Petitioner was detained under 8 U.S.C. § 1231(a)(6) for *less than one day* when this Petition was filed -- well within the presumptively reasonable six-month period under *Zadvydas*. In any event, Petitioner cannot credibly make any showing that "there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas,* 533 U.S. at 701. ICE detained Petitioner *three days ago,* on February 27, 2025. Decl. ¶¶ 11-13.  ICE's detention has been proper, and release is not warranted.

II.    **PETITIONER DOES NOT HAVE A SUBSTANTIVE DUE PROCESS RIGHT TO FAMILY UNITY IN THE CONTEXT OF A FINAL ORDER OF REMOVAL**

Petitioner appears to argue that his detention, even if otherwise lawful, violates his substantive due process rights because it allegedly "interfere[s] with his protected parent-child relationship."  Petition Section II.  This argument nonetheless fails.

A substantive due process claim must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8, 118 S. Ct. 1708 (1998)).  Conduct is conscience-shocking only if it was "intended to injure in some way unjustifiable by any government interest."  *Lewis*, 523 U.S. at 849.  Where no fundamental right is at stake, "governmental regulation need only be reasonably related to a legitimate state objective."  *Goe v. Zucker*, 43 F.4th 19, 30 (2d Cir. 2022) (internal quotation omitted).

No court has ever held that an alien subject to a final removal order enjoys a fundamental right to remain at liberty in the United States. To the contrary, the Supreme Court has held that the

liberty interest of an alien under a final removal order is *not* fundamental.  *See Demore v. Kim*, 538 U.S. 510, 511 (2003). Indeed, Congress has expressly authorized post-removal-order detention under 8 U.S.C. § 1231(a)(6), and the Supreme Court has repeatedly underscored the plenary power of the political branches over admission, exclusion, and removal. *See, e.g.*, *Trump v. Hawaii*, 585 U.S. 667, 702 (2018); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977).

Additionally, Petitioner does not have a substantive due process right in the care and custody of his child in the context of detention in connection with a final order of removal.  Indeed, courts considering similar arguments have rejected them.

For example, in *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 22 (1st Cir. 2007), the petitioners alleged violations of constitutional rights, including the "right to make decisions about the care, custody, and control of their minor children," in connection with their detention and transfer following a workplace raid.  The First Circuit found no substantive due process violation:  "neither the petitioners' amended complaint nor their briefs offer any reason to believe that ICE's actions were so 'extreme, egregious, or outrageously offensive' as to cross the 'shock the conscience' line."  The court explained that its decision was "influenced by a realization that the evenhanded enforcement of the immigration laws, in and of itself, cannot conceivably be held to violate substantive due process. Any interference with the right to family integrity alleged here was incidental to the government's legitimate interest in effectuating detentions pending the removal of persons illegally in the country." *Id.* (*citing Payne–Barahona v. Gonzales,* 474 F.3d 1, 2 (1st Cir. 2007); *de Robles v. INS,* 485 F.2d 100, 102 (10th Cir.1973)).

Additionally, in *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210–11 (4th Cir. 2019), where petitioners who were being detained challenged their transfers from facilities close to their

10

children to facilities farther away, the Fourth Circuit stated that it was "unable to find a substantive due process right to family unity in the context of immigration detention pending removal . . . we have found no precedent recognizing that there is a right to 'family unity' limiting detainee transfers." *Id.* Indeed, the court specifically cited the case cited by Petitioner - *Troxel v. Granville*, 530 U.S. 57, 68 (2000) (which the court described as a case recognizing the "fundamental right to make decisions concerning the rearing" of one's children) -- but found that that case and others like it "hardly support the asserted right to be detained in the same state as one's children, the right to be visited by children while in detention, or a general right to 'family unity' in the context of detention." *Id.* The court further found that "we are hardly free to create a new substantive due process right in view of Supreme Court decisions cautioning courts from innovating in this area." *Id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

Lower courts that have considered challenges to detention based on claims related to family unity have relied on *Aguilar* and *Reyna* to reject them. *M.O.G.R. v. Warden, Stewart Det. Ctr.*, No. 4:25-CV-356-CDL-AGH, 2025 WL 3460936, at *5 (M.D. Ga. Dec. 2, 2025) ("Petitioner next claims that her detention violates the 'Constitution's protection of family unity.' Am. Pet. ¶ 26. But the Circuit courts that have addressed this issue in the context of immigration detention have found no substantive due process right to family unity.") (citing *Aguilar,* 510 F.3d at 21-23 and *Reyna*, 921 F.3d at 210); *Abdo v. Pompeo*, No. CV BPG-17-1053, 2020 WL 2614773, at *6 (D. Md. May 22, 2020) ("[T]he Fourth Circuit has not found a 'substantive due process right to family unity in the context of immigration detention pending removal.'") (citing *Reyna*, 921 F.3d at 210).

## CONCLUSION

For the reasons stated herein, the Petition should be denied, and the stay of removal should be lifted.

11

Dated:  Central Islip, New York
        March 2, 2026

                                        JOSEPH NOCELLA, JR.
                                        United States Attorney

                        By:     */s/ Marika M. Lyons*
                                MARIKA M. LYONS
                                Assistant U.S. Attorney
                                (718) 254-6484
                                Marika.Lyons@usdoj.gov

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1(C)</u>

I, Marika M. Lyons, certify that Respondents' Memorandum of Law, dated March 2, 2026

complies with the requirements of Local Rule 7.1(c), in that it contains 4,171 words.

Dated: March 2, 2026
      Brooklyn, New York

                                                  */s/ Marika M. Lyons*
                                                  Assistant U.S. Attorney